IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PHILIP CHARVAT, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MIRACLE-EAR, INC.,<br><br>    Defendant. | Case No. 2:17-cv-00940<br><br>Judge:    Hon. Algenon L. Marbley<br>Mag. Judge:    Hon. Elizabeth Preston Deavers |

**DEFENDANT MIRACLE-EAR, INC.'S RULE 12(B)(2) MOTION TO DISMISS**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Miracle-Ear, Inc. moves the Court for an order dismissing Plaintiff Philip Charvat's claim against it because this Court lacks personal jurisdiction over Miracle-Ear, Inc.

The reasons supporting this motion are set forth in the accompanying memorandum in support.

Dated:  December 11, 2017

Respectfully Submitted,

MIRACLE-EAR, INC.

/s/ *Seth H. Corthell*
Seth H. Corthell, Trial Attorney (0092573)
Martin W. Jaszczuk (*pro hac vice*)
JASZCZUK P.C.
311 South Wacker Dr., Suite 3200
Chicago, IL 60606
Telephone:  312-442-0401
Facsimile:  312-442-0519
scorthell@jaszczuk.com
mjaszczuk@jaszczuk.com

*Attorneys for Defendant Miracle-Ear Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PHILIP CHARVAT, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MIRACLE-EAR, INC.,<br><br>    Defendant. | Case No. 2:17-cv-00940<br><br>Judge:    Hon. Algenon L. Marbley<br>Mag. Judge:    Hon. Elizabeth Preston Deavers |

**MEMORANDUM IN SUPPORT OF
DEFENDANT MIRACLE-EAR, INC.'S RULE 12(B)(2) MOTION TO DISMISS**

**I.    INTRODUCTION**

This action arises out of two telephone calls that Plaintiff Philip Charvat ("Plaintiff") alleges were placed by Miracle-Ear to his residential telephone in violation of the Telephone Consumer Protection Act ("TCPA"). But Miracle-Ear does not operate in Ohio, did not place these calls, and cannot be held liable for the entity that did. Accordingly, the Court should dismiss Plaintiff's TCPA claim because the Court lacks personal jurisdiction over Miracle-Ear.

The calls alleged in Plaintiff's Complaint were placed by Hearing Services, LLC ("Hearing Services"), a third-party marketing firm established by the owner of a Miracle-Ear franchise that Miracle-Ear did not and does not control. Miracle-Ear does not have a business relationship with Hearing Services, did not direct Hearing Services to place the calls, and was not even aware that Hearing Services had placed the calls until Plaintiff filed this lawsuit.

In a factually similar case, this Court recently dismissed claims against a non-resident TCPA defendant for lack of jurisdiction because the plaintiff could not attribute the actions of the

2

third-party entity that placed the calls to the defendant. *See Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 589 (S.D. Ohio 2016) (Marbley, J.). The same reasoning applies here. Hearing Services, not Miracle-Ear, placed the alleged calls, and Plaintiff cannot attribute Hearing Services' actions to Miracle-Ear. As a result, Plaintiff fails to demonstrate that the Court can exercise specific jurisdiction over Miracle-Ear. Similarly, Miracle-Ear is also not subject to general jurisdiction because (a) Ohio law does not recognize general jurisdiction over non-residents, and (b) Miracle-Ear's connections to Ohio would be too attenuated to confer general jurisdiction in any event.

Accordingly, Miracle-Ear asks that Plaintiff's Complaint be dismissed.

## II. FACTUAL BACKGROUND

Miracle-Ear is a Minnesota corporation, with corporate headquarters located in Plymouth, Minnesota. (Declaration of Andi Ruth-Negrini ("Ruth-Negrini Dec."), at ¶3.)[1] Miracle-Ear does not have any office space, manufacturing plants, directors, or officers located in Ohio. (*Id.*)

Beall, Inc. ("Beall") is an Ohio corporation owned by Scott Beall, that operates a Miracle-Ear® franchise in Lewis Center, Ohio. (Declaration of Scott Beall ("Beall Dec."), at ¶2.)[2]

Miracle-Ear and Beall are parties to a franchise agreement ("Franchise Agreement"). (*E.g.*, Beall Dec., at ¶3.) The Franchise Agreement explicitly states that Beall is not Miracle-Ear's agent and does not have authority to act on behalf of, or otherwise bind, Miracle-Ear. (*E.g.*, *id.*) Pursuant to the Franchise Agreement, Beall represents that it will comply with all federal, state, and local laws in operating its business. (*E.g.*, *id.*)

In 2004, Scott Beall formed Hearing Services to perform management, administration, and marketing functions for Beall. (Beall Dec., at ¶¶5-6.) Hearing Services maintains its own bank

---

[1] A true and accurate copy of Andi Ruth-Negrini's declaration is attached hereto as Exhibit A.
[2] A true and accurate copy of Scott Beall's declaration is attached hereto as Exhibit B.

accounts and office space separate and apart from Beall. (Beall Dec., at ¶6.) Pursuant to its marketing responsibilities, Hearing Services operates an independent call center where its employees place telephone calls to current and prospective Beall customers. (Beall Dec., at ¶6.)

Miracle-Ear and Hearing Services have no business relationship. (*E.g.*, Beall Dec., at ¶7.) Scott Beall neither asked for permission nor informed Miracle-Ear when he formed Hearing Services. (*See* Beall Dec., at ¶7.) In fact, he had no obligation to do so, given that Miracle-Ear did not and does not control Beall's telemarketing practices. (*See* Beall Dec., at ¶8.)

Beall and Hearing Services operate independently of Miracle-Ear. (Beall Dec., at ¶¶7-9.) Beall controls its own local marketing campaigns, including its telemarketing efforts. (Beall Dec., at ¶¶8-9.) Specifically, Beall is not required by Miracle-Ear to engage in telemarketing – whether through Hearing Services or otherwise. (Beall Dec., at ¶9.) Beall and Hearing Services have control over the means and methods of organizing and executing telemarketing campaigns. (Beall Dec., at ¶¶8-9.) Beall is responsible for its own telemarketing scripts, and Miracle-Ear does not audit or oversee Beall's telemarketing efforts. (*E.g.*, Beall Dec., at ¶9.)

Beall's Lewis Center location offers free hearing tests to identify potential customers. (Beall Dec., at ¶10.) Hearing Services places advertisements in local and regional newspapers to publicize these free hearing tests. (*Id.*) When an individual attends a hearing test, Beall obtains the individual's contact information, which Hearing Services then occasionally uses to contact the individual to offer follow-up testing on an annual basis. (*Id.*)

Plaintiff's TCPA claims arise out of two telephone calls made to Plaintiff's wife on July 19, 2017 and September 12, 2017, respectively. (Plaintiff's Complaint, at ¶19.) Hearing Services placed the telephone calls at issue to Mrs. Charvat—not to Plaintiff, Mr. Charvat—after Mrs. Charvat provided her telephone number to Beall voluntarily when she visited Beall's Lewis Center

location in 2010 for a free hearing test. (Beall Dec., at ¶13.) During the appointment, Mrs. Charvat provided the telephone number in question to a Beall representative who in turn provided it to Hearing Services. (*Id.*) Hearing Services then called Plaintiff's wife on July 19, 2017 and September 12, 2017 to notify her about a free hearing test. (*Id.*)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a claim due to lack of personal jurisdiction. A plaintiff, when challenged, bears the burden of establishing personal jurisdiction over the defendant. *See Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). A court has three options when addressing a Rule 12(b)(2) motion: (1) the Court may decide the motion on affidavits alone; (2) it may allow jurisdictional discovery related to the motion; or (3) it may conduct an evidentiary hearing to address and resolve any factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If the Court decides the motion on the affidavits alone, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists." *Id.* If the Court allows for discovery or conducts an evidentiary hearing, the plaintiff's burden rises to a preponderance of the evidence standard. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

A "plaintiff cannot 'rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise[,] . . . specific facts showing the court has jurisdiction." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 582 (S.D. Ohio 2016) (Marbley, J.) (*quoting Serras*, 875 F.2d, at 1214). Although courts consider the pleadings and affidavits in the light most favorable to the nonmovant, the Court may accept a defendant's uncontroverted factual assertions. *HomeAdvisor*, 218 F. Supp.3d, at 582.

5

### IV. LEGAL ARGUMENT

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(2) because Plaintiff has failed to establish that this Court has personal jurisdiction over Miracle-Ear.

Plaintiff must establish that this Court has personal jurisdiction over Miracle-Ear either by means of general jurisdiction or specific jurisdiction. *See HomeAdvisor, Inc.*, 218 F. Supp.3d, at 583. General jurisdiction subjects a defendant to a court's jurisdiction regardless of whether the actual controversy has a connection to the forum state; such jurisdiction exists when a defendant's contacts with the state are so continuous and systematic that the defendant is essentially "at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Specific jurisdiction is more limited and "depends on an affiliation between the forum and the underlying controversy." *Id.* The Sixth Circuit uses a three-part test to determine whether specific jurisdiction is appropriate: (1) the defendant must purposefully avail himself of the privilege of acting or causing a consequence within the state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences he causes must have a sufficient connection with the forum state to warrant the exercise of jurisdiction. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002).

General jurisdiction over Miracle-Ear does not exist in this instance for two reasons. First, the Ohio Supreme Court and the Sixth Circuit have both recently ruled that the Ohio long-arm statute, which provides only for the exercise of specific jurisdiction, is the sole means of establishing personal jurisdiction over non-resident defendants. Accordingly, at present, non-residents such as Miracle-Ear are not subject to general jurisdiction in Ohio. Second, even if non-residents like Miracle-Ear were subject to general jurisdiction, in this instance Miracle-Ear's contacts with Ohio would be too attenuated for it to be considered "at home" in the state.

Plaintiff also cannot show that Miracle-Ear is subject to specific jurisdiction given that his TCPA claim arose from Hearing Services', not Miracle-Ear's, activities in Ohio. And, like in *HomeAdvisor*, liability for the calls at issue here cannot be attributed to Miracle-Ear because Miracle-Ear did not and does not control either Hearing Services or Beall and did not otherwise authorize either entity to place the calls at issue.

A. **Miracle-Ear is not subject to general jurisdiction because Ohio law does not recognize general jurisdiction over non-resident defendants.**

Miracle-Ear is not subject to general jurisdiction because Ohio law does not recognize general jurisdiction over non-resident defendants. *Conn v. Zakharov*, 667 F.3d 705, 718 (6th Cir. 2012) ("[I]t is clear that under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute."). The Ohio Supreme Court has held that a non-resident defendant is subject to personal jurisdiction only where the Ohio long-arm statute confers jurisdiction. *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St. 3d 81, 85 (Ohio 2010) ("Determining whether an Ohio trial court has personal jurisdiction over a nonresident defendant involves a two-step analysis (1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction . . ..") By its terms, the Ohio long-arm statute only allows courts to assert *specific jurisdiction* over non-resident defendants. Ohio Revised Code §2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from the acts enumerated in this section may be asserted against him."). *See also Zakharov*, 667 F.3d, at 718; *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 Fed. App'x 427, 429 (6th Cir. 2014). [3]

---

[3] In *Roxane Labs., Inc. v. Vanda Pharms, Inc.*, this Court acknowledged "robust arguments" as to whether the Ohio long-arm statute provides for general jurisdiction over non-resident defendants. No. 2:16-cv-00179, 2016 U.S. Dist. LEXIS 175785, at *8-9 (S.D. Ohio Dec. 20, 2016) (Marbley J.). Although the Court found general jurisdiction existed over the non-resident defendant, that decision is distinguishable from the facts at issue here because the Court was compelled to follow precedent from the United States Court of Appeals for the Federal Circuit, which had previously held that general jurisdiction can be asserted over non-resident defendants in Ohio. *LSI Indus. Inc. v. Hubbell Lighting,*

7

Accordingly, because Miracle-Ear is a non-resident, it is not subject to general jurisdiction in Ohio. (Ruth-Negrini Dec., at ¶2.)

**B.** **Even if Ohio law did provide for the exercise of general jurisdiction over non-residents, Miracle-Ear's contacts with Ohio would be too attenuated to confer general jurisdiction.**

If Ohio law did provide for the imposition of general jurisdiction over non-residents, the result in this case would nevertheless remain the same, as Miracle-Ear lacks a corporate presence in Ohio and its contacts with the state are minimal.

In *Daimler AG v. Bauman*, the Supreme Court restated that the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." 134 S. Ct. 746, 760 (2014) (*citing Goodyear*, 564 U.S., at 924). While asserting general jurisdiction outside of the place of incorporation or principal place of business is not impossible, to do so Plaintiff would need to show that the corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home." *Id.*, at 761.

This Court recently recognized the principles set forth in *Daimler* in the patent case *Roxane Labs v. Vanda Pharms, Inc.*, No. 2:16-cv-00179, 2016 U.S. Dist. LEXIS 175785, at *11-14 (S.D. Ohio Dec. 20, 2016) (Marbley J.). In *Roxane Labs.*, a plaintiff drug company brought a declaratory judgment in this Court against a non-resident pharmaceutical company that had "no corporate presence" in Ohio. *Id.*, at *11. The plaintiff maintained that the defendant's extensive sales in Ohio and "business activities," including a contract with an Ohio company to manufacture the defendant's product, made it amenable to general jurisdiction. *Id.*, at *5. This Court ruled that the defendant's business activities and sales in Ohio did not provide a sufficient basis to render the

---

*Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000). The *LSI* opinion is not applicable here because (a) Federal Circuit precedent is not at issue in this case, and (b) *LSI* was decided prior to the subsequent opinions from the Ohio Supreme Court in *Kauffman Racing* and the United States Court of Appeals for the Sixth Circuit in *Zakharov*, which both found that the Ohio long-arm statute is the sole means of establishing personal jurisdiction over nonresident defendants.

8

defendant at home in the state. *Id.*, at *8-14. Specifically, the Court noted that the defendant had "no corporate presence of any kind" because it did not have any offices, manufacturing plants, directors, or officers in Ohio. *Id.*, at *11. And the defendant's contract with an Ohio company was irrelevant where the plaintiff could not show that the Ohio company was the defendant's agent or alter ego. *Id.*, at *13. Finally, the Court held that exercising general jurisdiction based on the defendant's sales in Ohio "would allow for the exorbitant exercise of general jurisdiction by courts in *all* states where that corporation had sizable sales." *Id.*, at *13-14 (emphasis in original).

Here, the facts are nearly identical. Miracle-Ear's only real connections to Ohio are the sale of Miracle-Ear branded products to franchisees in Ohio and its contracts with Ohio companies. But these connections are insufficient to establish general jurisdiction because Miracle-Ear does not have a corporate presence in Ohio. Miracle-Ear does not maintain an office or manufacturing facility in Ohio, and it does not have any officers or directors in the state, either. (Ruth-Negrini Dec., at ¶3.) As a result, Miracle-Ear's contacts with the state fall well short of those required under *Daimler* for the exercise of general jurisdiction and Miracle-Ear, like the defendant in *Roxane Labs*, cannot be said to be "at home" in Ohio. Accordingly, the exercise of general jurisdiction over Miracle-Ear under these circumstances would subject the company to the "exorbitant exercise of general jurisdiction" that this Court recently warned of in *Roxane Labs*, 2016 U.S. Dist. LEXIS 175785, at *13-14.

C. **Miracle-Ear is not subject to specific jurisdiction because it did not place the calls in question and it is not vicariously liable for the entity that did.**

Plaintiff cannot establish that specific jurisdiction exists over Miracle-Ear given that Miracle-Ear did not place the alleged calls to Plaintiff's wife and cannot be held vicariously liable for the entity that did.

9

1. **The FCC set forth its framework for ascertaining vicarious liability in *In re DISH Network*.**

The FCC has stated that a court can only hold the individual or entity that actually initiates a violative call directly liable for a TCPA violation. *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013) ("a seller is not directly liable for violation of the TCPA unless it initiates a call . . ."). Plaintiff, thus, cannot allege that specific jurisdiction exists based on a theory that Miracle-Ear is directly liable for the calls because Miracle-Ear did not make or initiate the calls in question. (*E.g.*, Beall Dec. at ¶12.) Accordingly, the only other means for Plaintiff to establish that the Court has specific jurisdiction over Miracle-Ear is by showing that Miracle-Ear can be held vicariously liable for the actions of Hearing Services, the entity that initiated the calls. *HomeAdvisor*, 218 F. Supp. 3d, at 584-85 (finding that a seller may be liable for a TCPA violation and thus subject to personal jurisdiction where plaintiff shows that the seller is vicariously liable for the violative calls).

According to the FCC, common-law agency principles provide the proper framework for assessing whether a seller is vicariously liable for calls placed by third-parties on the seller's behalf. 28 FCC Rcd., at 6582. *See also Charvat v. Echostar Satellite, LLC*, 2:07-cv-01000, 2014 U.S. Dist. LEXIS 157405, at *1-2 (S.D. Ohio October 31, 2014) (acknowledging the FCC order with respect to vicarious liability). Under this framework, "defendants may be held vicariously liable for TCPA violations 'under a broad range of [federal common-law] agency principles, including not only formal agency, but also principles of apparent authority and ratification." *HomeAdvisor, Inc.*, 218 F.Supp. 3d, at 585 (*quoting DISH Network*, 28 F.C.C. Rcd., at 6584.)

In *Johansen v. HomeAdvisor, Inc.*, this Court recently addressed vicarious liability under the TCPA in the context of a 12(b)(2) motion. In *HomeAdvisor*, the plaintiff brought claims against HomeAdvisor based on calls placed by Lead House, a third-party with which HomeAdvisor had no business relationship. *Id.*, at 581. Lead House was not placing the calls on behalf of

HomeAdvisor or even providing the telephone numbers to HomeAdvisor directly, but instead was providing them to defendant One Planet, a third-party marketing firm that then provided the numbers to HomeAdvisor. *Id.* The Court found that HomeAdvisor was not vicariously liable for Lead House because there was no baseline principal-agent relationship between the entities, and even if such a relationship had existed, HomeAdvisor was not sufficiently aware of Lead House's wrongful conduct to effectively ratify such conduct. *Id.*, at 585.

> 2. **Miracle-Ear is not vicariously liable under any agency theory because Hearing Services is not Miracle-Ear's agent.**

Consistent with *HomeAdvisor*, to attribute Hearing Services' actions to Miracle-Ear, Plaintiff here would need to establish a principle-agent relationship between Hearing Services and Miracle-Ear. *See HomeAdvisor*, 218 F.Supp. 3d, at 586 (finding that a principal-agent relationship is a prerequisite even to establish liability by means of ratification); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 372 (6th Cir. 2015) (describing common law agency as the fiduciary relationship arising where the principal manifests assent to another to act on the principal's behalf subject to the principal's control).

Plaintiff cannot clear this baseline hurdle. Miracle-Ear's relationship with Hearing Services (or better-stated, its lack thereof) is akin to HomeAdvisor's relationship to Lead House. Like HomeAdvisor, Miracle-Ear has never had any "agreements, arrangements, or contracts with" Hearing Services. (Ruth-Negrini Dec., at ¶10.); *Id.*, at 587 ("HomeAdvisor has no agreements, arrangements[,] or contracts with Lead House, nor has any such relationship existed between the two companies."). Moreover, Miracle-Ear did not direct Hearing Services to call Plaintiff as Hearing Services and Beall operate independently of Miracle-Ear. (*E.g.* Beall Dec. at ¶2.); *Id.* ("HomeAdvisor has not directly communicated or contacted Lead House at any time."). Indeed, Miracle-Ear did not exert any control over Hearing Services' telemarketing activities, directly or

indirectly. (*E.g.* Beall Dec. at ¶¶7-9.); Restatement of the Law (Third) Agency, at §1.01, cmt. f (Am. Law Inst. 2006) ("An essential element of agency is the principal's right to control the agent's actions.").

Accordingly, there is no agency relationship between Miracle-Ear and Hearing Systems and Plaintiff cannot hold Miracle-Ear vicariously liable for the calls placed by Hearing Services.

### 3. Beall is not an agent of Miracle-Ear, either.

Given the dearth of connections between Miracle-Ear and Hearing Services, Plaintiff may attempt to argue that Miracle-Ear is vicariously liable for the calls based on its contractual relationship with Beall. This argument fares no better. To begin with, Beall did not place the calls – Hearing services did. (*E.g.* Beall Dec., at ¶12.) But even if Beall had itself placed the calls, Plaintiff still could not attribute liability for the calls to Miracle-Ear because Beall is not Miracle-Ear's agent.

The Southern District of Ohio has recognized that a franchisee-franchisor relationship does not automatically give rise to a principal-agent relationship. *Barrett-O'Neill v. Lalo, LLC*, No. 2:14-cv-194, 2014 U.S. Dist. LEXIS 109830 (S.D. Ohio Aug. 8, 2014) (granting a motion for judgment on the pleadings for defendant franchisor on claims stemming from its franchisee's actions where plaintiff alleged the franchisor was vicariously liable for the franchisee's actions). "Under Ohio law, '[t]he determinative factor in deciding whether an agency relationship exists between a franchisor and a franchisee is the degree of control the franchisor has over the operation of the franchisee's business.'" *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) (*quoting Coleman v. Chen*, 712 F. Supp. 117, 124 (S.D. Ohio 1988). When considering the issue on a motion to dismiss standard, Plaintiff cannot rely on conclusory allegations that an agency relationship exists; the complaint must allege specific facts that support a finding that an agency relationship exists. *Barrett-O'Neill*, 2014 U.S. Dist. LEXIS 109830, at *10.

In *Barrett-O'Neill v. Lalo, LLC*, the Southern District of Ohio considered whether a franchisor could be liable for its franchisee's alleged breach of contract.  2014 U.S. Dist. LEXIS 109830, at *7.  The plaintiff alleged that sufficient control existed because the franchisor provided training materials, conducted a two-day long program for new franchisees, and provided preapproved advertisements and marketing materials. *Id.*, at *11-12.  The court disagreed.  It found that these allegations were insufficient to prove that the franchisor had the right to control the franchisee's "method and means" of conducting its business. *Id. See also Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 832 (E.D. Mich. 2000) ("All that the franchise agreement in this case does is give Defendants control over the quality of services its franchisee provides. A franchisor's insuring the uniformity and standardization of . . . services, however, does not give rise to an agency relationship."); *Puente v. Garcia*, No. L-86-134, 1986 Ohio App. LEXIS 9849 (Ohio Ct. App. Dec. 12, 1986) ("If the franchisor has no power over the daily operations of the business, so as to vest the franchisor with control within the definition of agency, the franchisor cannot be held vicariously liable for the negligence of a franchisee.").

In this instance too, the franchisor, Miracle-Ear, does not exert sufficient control over its franchisee, Beall, to give rise to an agency relationship.  Indeed, the Franchise Agreement itself disclaims the existence of an agency relationship between Miracle-Ear and Beall and, in fact, precludes Beall from binding Miracle-Ear. (*E.g.*, Beall Dec., at ¶3.)  In practice as well, Beall operates independently of Miracle-Ear. (*E.g.*, Ruth-Negrini Dec., at ¶6.)  Miracle-Ear does not require Beall to engage in telemarketing and, when Beall does choose to utilize telemarketing, it controls the administration of its own telemarketing campaigns. (*E.g.*, Beall Dec., at ¶9.)  Under these circumstances, Plaintiff cannot establish that Miracle-Ear sufficiently controls the "method

13

or means by which [Beall] conduct[s] its business." *Barrett-O'Neill*, 2014 U.S. Dist. LEXIS 109830, at *12

Beall, accordingly, is not an agent of Miracle-Ear, and Plaintiff cannot hold Miracle-Ear responsible for Beall's actions in this instance.

> **4.     Even if an agency relationship existed between Miracle-Ear and Hearing Systems or Beall, Plaintiff cannot show that either acted with actual or apparent authority, or that Miracle-Ear ratified their actions.**

Putting aside the absence of a principle-agent relationship, Miracle-Ear did not authorize the alleged calls, and did not ratify them after the fact.  And a principal is only liable for the actions of its agent when the agent acts with authority (either actual or apparent) or if the principal ratifies the conduct.  *HomeAdvisor*, 218 F. Supp.3d, at 585.

An agent acts with actual authority when he acts based on the principal's manifestations to the agent that the agent reasonably believes entrusts it with authority to bind the principal in a specified way.  *See* Restatement, at §2.01.  Apparent authority, on the other hand, exists when the principal's manifestation to a third party reasonably leads the third party to believe that the agent is authorized to bind the principal with respect to a given matter.  *See* Restatement, at §2.03. Finally, if an agent acts without authority, the principal can ratify the conduct by affirming the conduct after the fact.  *See* Restatement, at §4.01; *HomeAdvisor*, 218 F. Supp. 3d, at 586.  None of these bases are applicable here.

First, Plaintiff cannot show that Beall or Hearing Services acted with actual authority, because Miracle-Ear did not make any manifestations to either company that could reasonably be interpreted as a direction to call Plaintiff.  (*See* Beall Dec., at ¶¶12-13.) Miracle-Ear did not require Beall or Hearing Services to engage in telemarketing, it did not provide Plaintiff's telephone number to them, and it did not place the advertisement that led to them obtaining Plaintiff's telephone number.  (Beall Dec., at ¶¶9, 12-13.)

14

Second, there are no facts to support a finding of apparent authority. Plaintiff has not alleged any facts to support a finding that Miracle-Ear made a manifestation to Plaintiff that Plaintiff could reasonably understand to provide either Beall or Hearing Services with authority to call him on Miracle-Ear's behalf.

Finally, like in *HomeAdvisor*, Miracle-Ear did nothing to ratify Hearing Services' actions. In *HomeAdvisor*, this Court found that even if an agency relationship existed between HomeAdvisor and Lead House, the plaintiff's complaint did not adequately allege ratification because there were no facts tending to show that HomeAdvisor knew, or should have known that Lead House was engaging in wrongful conduct. 218 F. Supp. 2d, at 587-89. The same is true here. Miracle-Ear was not aware that Hearing Services was placing calls in violation of any laws, to Plaintiff or to anyone else. (*E.g.*, Ruth-Negrini Dec., at ¶10.) *See* Restatement, at § 4.06, cmt. d. In fact, like *HomeAdvisor*, Beall, the only third party with which Miracle-Ear had a contractual relationship, represented in the Franchise Agreement that it would comply with all relevant federal laws. (*E.g.*, Ruth-Negrini Dec., at ¶5.) *HomeAdvisor*, 218 F. Supp. 2d, at 588 (finding that HomeAdvisor included a similar provision in its contract with its marketing firm, One Planet). *See also Jones v. All Am. Auto Prot., Inc.*, No 3:14-cv-00199, 2015 U.S. Dist. LEXIS 158652, at *15 (D. Nev. Nov. 24, 2015) (finding that ratification was not a plausible basis to hold a seller liable where its contract with the third party required the third party to comply with all applicable state and federal laws).

*HomeAdvisor* does not stand alone for the proposition. Several days ago, two district courts, one in California and one in Florida, dismissed TCPA claims for lack of jurisdiction because the plaintiffs likewise failed to attribute the conduct of third parties that actually gave rise to the TCPA claims to the defendants. *Naiman v. TranzVia LLC*, 17-cv-4813, 2017 U.S. Dist.

199131 (N.D. Cal. Dec. 4, 2017) (finding that jurisdiction did not exist because the defendant was not vicariously liable for calls placed by a third-party marketing firm under any agency theory even though the third-party marketing firm placed the calls pursuant to a contract with the defendant to provide sales leads to the defendant); *S.A.S.B. Corp. v. Concordia Pharms., Inc.*, No. 16-14108-CIV, 2017 U.S. Dist. 199021 (S.D. Fl. Dec. 1, 2017) (dismissing defendants where the plaintiff failed to show that faxes allegedly sent by a third party in violation of the TCPA were attributable to the defendants).

Accordingly, even if Plaintiff could establish an agency relationship between Miracle-Ear and Hearing Services or Beall—which he cannot—Miracle-Ear would nevertheless not be vicariously liable for their conduct as it did not authorize or ratify the placement of the calls. As a result, Miracle-Ear is not amenable to specific jurisdiction in Ohio.

### V.　CONCLUSION

Plaintiff's complaint attempts to hold Miracle-Ear, a non-resident with limited connections to Ohio, liable for calls placed by a third party over which Miracle-Ear exerted no control. For the reasons discussed above, Miracle-Ear is not subject to general or specific jurisdiction in Ohio and, accordingly, Plaintiff's claim against Miracle-Ear should be dismissed.

Dated:  December 11, 2017

Respectfully Submitted,

MIRACLE-EAR, INC.

/s/ *Seth H. Corthell*
Seth H. Corthell, Trial Attorney (0092573)
Martin W. Jaszczuk (*pro hac vice*)
JASZCZUK P.C.
311 South Wacker Dr., Suite 3200
Chicago, IL 60606
Telephone:  312-442-0401
Facsimile:  312-442-0519
scorthell@jaszczuk.com
mjaszczuk@jaszczuk.com

*Attorneys for Defendant Miracle-Ear Inc.*

**CERTIFICATE OF SERVICE**

I, Seth H. Corthell, an attorney, certify that I caused the foregoing Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to be served upon all persons and entities registered and authorized to receive such service through the Case Management / Electronic Case Filed (CM/ECF) system on December 11, 2017.

/s/ *Seth H. Corthell*